Take the matter under advisement. Call our next case, National Collegiate Athletic Association et al. v. Governor of the State of New Jersey et al. Governor of the State of New Jersey et al. Have a seat. All right, Mr. Olson. Good morning, Your Honors. Theodore Olson on behalf of the State Appellants. I would like, with the Court's permission, to reserve five minutes for rebuttal. As granted. May it please the Court. The sports leagues and the United States argued at every level of the federal judiciary, including the United States Supreme Court, that New Jersey was not required to maintain and was free to repeal its existing prohibitions on sports wagering. This Court agreed, rejected what it called the false equivalence between repeal and authorization, and held that PASPA only prohibited the issuance of licenses or affirmative authorizations by law of sports wagering. Mr. Olson, you talk about affirmative authorizations, but the statute really says authorized. It doesn't say affirmative. What does authorized mean? What the statute means in the context of all of those arguments to which I referred and this Court's decision, the repeal of prohibitions of sports wagering in certain locations under certain circumstances. It's decriminalization, to use the words of other courts in this Court. But what does the word authorized mean? Does it mean to permit? Does it mean to allow? Does it mean to sanction? Does it mean to indicate, designate? What does it mean? In the context of this Court's opinion, it means that it's not prohibited. This Court said that authorization and repeal are not equivalents. What New Jersey did is repeal the ordinances or the statutes. But in a limited way, so as to permit in casinos, and I'll use just the word casinos, but we know it's casino, racetracks, former racetracks. I mean, if prohibition was repealed in this country, which meant that people could drink, what if prohibition was repealed to the extent that drinking could occur in private clubs? Wouldn't that mean they're authorized in private clubs? That argument, we made that argument, the state made that argument from the very beginning, that if PASPA means that repealing a prohibition, and if PASPA means that requiring a state to maintain an ordinance prohibiting this, a statute prohibiting this activity, that would raise Tenth Amendment questions. And when this Court heard those arguments the last time, twice, in your opinion, you said that those would raise significant constitutional questions, repeal an authorization as a false equivalent, and responding to the arguments made by our opponents, all the way up to the Supreme Court, and helping to convince the Supreme Court not to take this case on Tenth Amendment grounds. Are you saying that we said in Christie I, that we held in Christie I, that a repeal of prohibitions can never be an authorization by law? We're talking only in the context of this particular statute, and this Court's decision to avoid the constitutional questions, you said it twice, on page 232 and 233 of the opinion, that repeal and authorization are false equivalents, that withdrawing the prohibition, decriminalizing, there's an exact— We weren't addressing this fact pattern. We were addressing total repeal as a false equivalence, as compared to repeal that designates the permission of some, but not others. This was not before us, the partial repeal. Well, what was before you was whether or not repeal was the equivalent of authorization. And that was before you. And if you had repealed, then it wouldn't have been authorization. But that's not what the repeal, that's not what the law, 2014 law says. And we're dealing with that set of facts. Well, when the courts talked about the binary choice, so to speak, to use the words of our opponents, the court was saying, to the extent that that argument is made, and to the extent it's entertained, that notion, under that view, that was a hypothetical example. We don't believe. It's not up to us, of course. We can make arguments. You're the ones that decide what you meant in that prior opinion. But I submit that the context of that opinion and the outcome of that opinion, if the federal government were to say, you cannot repeal any portion of this, for example, New Jersey has a statute that prohibits pumping gas. You can't do that yourself. If New Jersey decided, well, we're going to lift that prohibition in small communities or large communities, that's not authorization. That is, because what this court said. It's regulation. It's not regulation. It's regulation of an activity. It's saying that this is the equivalent of ping pong in a casino or a debate tournament in a casino. The affidavits and the declarations that are part of the summary judgment proceeding, which must be taken as true, and the language of the statute specifically says, this is not authorization. It may not be construed as authorization. How about the idea of restricting sports gambling to specific locations? Is that not the same as authorizing sports gambling in those two locations? Let's just say, let me answer that question this way. Suppose New Jersey did eliminate an across-the-board blanket prohibition, which our opponents are now arguing. They were never arguing this before. And then made a specific prohibition with respect to 100 yards from schools or in other locations besides racetracks and casinos. And limited it to 21-year-olds. Would the passing of that prohibition all of a sudden mean that it was a violation of PASPA? This is an Orwellian concept that the repeal in certain locations somehow is an authorization and that you have to repeal. A statute that was enacted to prohibit the spread or limit the spread of sports betting is somehow constitutional only if you allow it to take place everywhere in the state. Well, then I get allowed to take place in parts that are already heavily regulated. That's where it's at. Everything in New Jersey is heavily regulated, Your Honor, with respect. Buffer shops are regulated, beauty shops, law offices, doctors' offices. Licensing requirements. Pardon me? Licensing requirements. Licensing requirements to practice law, to practice medicine, to own a beauty salon. There's one very specific here. What about the requirement that sports betting operations obtain the consent of licensed casinos? I'm not sure. Does that mean that sports betting is functioning under the auspices of a licensed casino? Well, what takes place in a casino is going to be with the permission of the people that own the casino and run the casino. But it's not a matter of state regulation as the declarations demonstrate. What about the idea that you have to get the licensed casino's permission to operate sports betting in that casino? Well, you have to get any landowner or office building owner or building owner's permission to operate anything in their building. If you own a grocery store and you have a concession stand in there or people giving out selling girl's stuff, you have to have permission to do that. I get back to the question again of what authorized means. Let's say instead of casinos, it said non-profit, the headquarters of non-profit corporations. That's the repeal so that it can act there. It still depends on what the word authorized means. Does it mean to permit or allow? Does it mean to empower or give the state imprimatur? What does it mean? What it means... We've got to decide that. Well, you haven't decided that. I've counted over 20 times in the previous opinion where it says affirmatively authorized, affirmatively licensed, or authorized by law. You put that by law. But we didn't decide what authorized means. Yes, you did, it seems to me, with respect, Your Honor. You said by law. An affirmative act of the state giving approval, permission affirmatively, you put by law in italics. The affirmative aspect I would suggest is dictum. We have a law that says authorized. In fact, it does not say affirmatively. It's a functional equivalent of affirmatively authorized. I wish we had been able to convince the prior court that that was the construction of passbook. So we need to embank this case to... We tried that last time. Because if that is the interpretation, that clearly violates the 10th Amendment. And that's exactly the concern we expressed at the very beginning of this litigation. And we've tried to argue that there's a 10th Amendment violation. Maybe we should clarify what Christie 1 says. I don't see how you could make it more clear, Your Honor, but if you think you can... Deal with a, you know... If the statute requires New Jersey to maintain prohibitions and enforce prohibitions on sports betting in its state, it violates the 10th Amendment. And it's unconstitutional across the board. I know your time is up, but I'm really interested in how this whole thing is going to unfold. Because I was very impressed in reading your brief with the number of regulations that the state is repealing, including oversight by the state and the Casino Control Commission, the Division of Gaming Enforcement. They will all, according to the state, have no role whatsoever in sports betting. Correct. And that's... Well, I'm a little concerned about that because the function of those committees is to preserve integrity in the process. And now the state is saying they're out of this. So this is essentially a laissez-faire. Sports betting is going to take place in a casino with no oversight whatsoever. That's right. As I said, like a ping-pong table game or... I guess it's not for us to say that's good or bad. It's exactly... If it were, I would have a response to that. The United States Attorney last time, during the oral argument, was asked essentially that question. He said it's a bad policy. And he said it didn't violate Passport. It would be a bad idea. It would be a bad policy. He said, really, really, really bad idea. Let's put another four minutes on. And we'll do the same thing for opposing counsel. Do you read PASPA as saying that, assuming the law were repealed in toto and operations came up all across the state of sports gambling, do you read PASPA to prohibit the state from regulating, imposing any kind of regulations on the sports gaming? Well, that's what our opponents are essentially saying now. But I'm asking you, is that how you read it? Well, we originally read PASPA as requiring states to prohibit the activity, to stop the sport betting. We were then told by the leagues and by the United States government and by this court's decision, repeal is okay. You may repeal your prohibitions in whole or in part. If the state is engaged to address your exact question in regulating the activity, that might involve the imprimatur of regulation and control. But which verb under PASPA would regulation fall under? It's not sponsoring. It's not operating. It's not advertising, promoting, licensing or authorizing. It's regulating. Well, I think it is a different question. But to the extent that the regulatory regime, I was going to make this point a moment ago. Compare the 2012 regime, which had a highly articulated program to make sure honest people were doing it, to make sure bettors were protected, to make sure it was a clean environment, to make sure that books were kept, to make sure taxes were paid. Compare that with the 2014 enactment, which was directly responsive to the arguments of our opponents that said that prohibitions may be repealed in whole or in part. But, you know, PASPA is so specific. There are six specific activities that you cannot engage in. But regulating is not part of that. That's right. So I'm just wondering, maybe thinking out loud, that maybe some modicum of regulation is appropriate, if you were right in the first instance. Well, if we were right in the first instance, then the states would be able to have the right to proceed in the way that they thought, and they would be able to regulate this activity. It's an argument we were making in the first instance, and we made it over and over again. Part of that regulation, I mean, you do say that individuals under the age of 21 cannot bet on sports. And we have laws against fraud and armed robberies at casinos and all those other state police power activities. Will the casino operators be the ones that operate sports betting? Under the 2014 Act, the casino's operator would control it in whatever way they wanted. They would have people come in and operate a sports book. What is the state's role? Pardon me? What is the state's role? Zero, Your Honor. That's what the affidavits are. You're just letting it happen. As I said before, it's a laissez-faire kind of thing. It may be a bad idea. It may be a bad idea. We might concede that. It might be better for this kind of activity to be overseen. The restrictions you impose are location. It can only take place in the racetracks and the casinos. Or on the highway, perhaps. There's various other things that the states can do that, irrespective of the activity itself, by controlling the activity of citizens under normal police power. What you're doing, what the 2014 law is doing, is effectively revising the licenses held by the casino operators. No, the license of the casinos have to do with certain activities. It doesn't have to do with whether people walk fast through the casino, whether they dress properly. There's all kinds of things that aren't regulated. But they're allowing them to take bets, and they were not, as part of a licensing, allowed to do that. This is what we were told by this court, is that repeal of the prohibition would be permitted. Now we're being told that you have to repeal all prohibitions. It's curious, isn't it, that sports betting is now being allowed only in places that have gambling licenses? No, that's not factually correct. The racetracks do not have gambling licenses. And betting licenses. They do not have, they're not licensed for this activity, or any activity having to do with gambling. So from a factual standpoint, that's not correct. But the fact is that the repeal of prohibition was lifted in certain locations. It could have been barbershops, and we could have been facing the same thing. The barbershop has a license, and you're allowing, you've changed the license of the barbershop. But that's not true. The license goes to the activity, and it doesn't go to other activities that might take place in that venue. All right. Thank you. We'll hear from you on rebuttal. Mr. Riccio. Good morning, Your Honors. Ronald J. Riccio, appearing for the New Jersey Thoroughbred Horsemen's Association. I'd like to first address Judge Florenti's question. How will it unfold if this 2014 act is validated? Well, what it will mean is this. There will be no state regulation of sports betting at Monmouth Park. That is correct. That doesn't mean that Monmouth Park is going to become the Wild West of sports betting. What it means is that Monmouth Park is already created, and it's in the record at page 275 of the appendix. We've already created the Independent Sports Wagering Association. We will promulgate our own house rules. Private self-regulation is something that has a long history in this country, whether it's the brokerage industry, the real estate industry, our legal profession. Private self-regulation is a viable alternative and sometimes a better alternative than government regulation. So that will happen at Monmouth Park. Are the private operators going to deal with any instances of corruption or misdeeds or stealing? All of the state and federal laws that deal with consumer protection, criminal penalties and the like, remain in full force in effect at the sports betting venue. The only thing that doesn't get regulated is the sports betting itself. But it will be the licensed casino operators that will be in charge of that or responsible for that. The licensed casino operators will be responsible for that in conjunction with their own security, their own surveillance. So does that mean that sports betting needs to have licensed operators? No, not at all. In fact, the way the 2014 Act is set up as compared to the 2012 Act is that the state has no role in the licensing or authorization of sports betting. It is left entirely to the private sector to regulate as it sees fit based on its training and experience. Now, Monmouth Park, for example, that track has been in operation since 1946. It has a record of dealing with the conduct of horse racing responsibly, professionally and with integrity. On the issue of integrity, integrity is actually promoted by having Monmouth Park engage in sports betting. Don't we then have an issue? One of Congress's thoughts in enacting PASPA was they don't want the idea of state involvement would make gaming seem appealing. And they didn't want gaming to seem appealing. So you're arguing the integrity of these institutions. Well, doesn't that really run counter to the idea that this kind of designation, if you will, of places with integrity might be something Congress really didn't want as compared to allowing gaming at the corner grocery store? Well, if that were true, Your Honor, and I don't think it is, then they would never have grandfathered Nevada. If they were concerned about the state putting its imprimatur on sports betting, Nevada would have never been grandfathered. Well, but then they also gave a year for Atlantic City to say that that's what it is, which also might be deemed to be an implicit thought that after a year, it clearly wouldn't be permissible for the casinos to do it. Well, what PASPA was concerned about was it appearing to the public that the state was sanctioning sports betting. That's not the case. And on the issue of sanctioning sports betting, the league sanctioned sports betting. It doesn't appear to the public. I mean, we don't have that on the record. But you're saying it wouldn't appear to the public that the state's sanctioning it if it's going on in casinos? No, no, not at all. What would appear to the public is that sports betting is being regulated in the same way at Monmouth Park as it's being regulated in Nevada. What if the law said, notwithstanding any other law currently in effect, sports gambling shall hereafter be allowed to occur at casinos and racetracks? Is there any problem with that under PASPA? No, I don't think there is. Well, that's unauthorized. No, no, it would be authorizing if the word authorization or license was used, and that's the difference between the case now and the case in Christian law. So you're saying authorization and license are the same? Well, authorization and license, based upon the way in which Christie 1 was decided, I think could be interpreted the same. Authorization in PASPA says authorized by law. Then authorized would be superfluous in the federal statute. I think it wouldn't be superfluous. I think it would be augmenting the meaning of the word authorization. But the point is that authorization and license in the 2014 act have both been repealed. You said authorizing would be augmenting the word authorization? Authorization and licensing would be terms that would augment each other. Well, let me put it this way. Where is authorizing closest to? It's already there. We're authorizing our licensing, right? Well, there is no license under the 2014 act, and there is no authorization under the 2014 act. Neither are there. The legislature in New Jersey specifically said this is how the 2014 act is to be construed. It's to be construed as a repeal, not as an authorization, not as a license, not as a sponsor, and not as an operation. You talk about a mere repeal in your brief. Yes. Mere repeal. Mere repeal. That's not what the 2014 law was. It was not a mere repeal, was it? A mere repeal means that there is no accompanying authorization or license. By mere repeal, what we mean is that 2014 act. The law goes away. Repeal, right? The law goes away unless there is a savings provision in the act which says, except that the following locations are not repealed. Then you are dealing possibly with authorization as to those particular locations, but not as to the repeal locations. Okay. All right. I think we understand your argument. In terms of my time is up. I think, unless you have a different point to make. I was just going to point out the question regarding partial repeal, and that is that the New Jersey Constitution implicitly required that the authorization be limited in terms of gains to be waged on. So when we were here in Christie 1, we were dealing with a partial repeal. Well, actually, if sports gaming work isn't being authorized, then doesn't that violate the New Jersey Constitution, which prohibits gaming except if the legislature has authorized. Isn't that correct? The New Jersey Constitution only requires a voter referendum if there is an authorization. There is no authorization in the 2014 act that's a repeal. All right. Well, maybe Mr. Clement can address that. Thank you. Thank you. Mr. Griffinger. Thank you. Michael Griffinger, Givens, for the New Jersey legislature. This is our 2014 act that I'm here to defend. And what PASPA says in answer to your question, Judge Rendell, is that there shall be no authorization by law. And I think other counsel have mentioned that. That's clear. There is no law. Well, 2014 law is a law, correct? It is a law that does not authorize sports betting. What does authorized mean? Authorized means, authorized by law, means enacting legislation that specifically says sports betting is permitted. That is not what this says. It repeals a law that said sports betting will be regulated by the state, authorized, sponsored, et cetera. That's what Congress meant. Mr. Griffinger, is that the difference between the 2012 and 2014 law? The difference is in 2012. Well, you authorized sports betting. Exactly. And that's exactly the flip side, the reverse of what was done in 2014. In the legislation itself, it says this is not intended nor should it be construed to authorize, sponsor, advertise. We don't take those signing statements that seriously. But Section 2 itself makes it clear, Section 2 of the act makes it clear that this is not authorization by law, that this is not a licensing provision. And if one looks at that, there's no question about it. But aside from the statement, the statement says we're just trying to comply with Christie 1. We're trying to implement Christie 1. And when Christie 1 said password suites only of authorizing by law, we said, all right, we will not authorize by law. When Christie 1 said the problem is under the auspices of state, of state approval and state authorization, Congress said it was concerned, in answer to your question, not of sports betting, but sports betting under the auspices and under, the quote is, to ban gambling pursuant to a state scheme. We don't have a state scheme. In answer to your question, yes, there will be self-regulation. Yes, this is not going to be the Wild West. Yes, in fact, the answer to several questions. We have to decide what we said in Christie 1, correct, initially, and then decide whether or not it needs clarification. Well, I can only speak to what we read Christie 1 to say and what the intent of the legislature was in reading Christie 1. And that was in Section 2 where it said, it is expressly not intended nor to be construed to have New Jersey sponsor, operate, et cetera, all those verbs. You can't say anything else to get around Christie 1. I agree. I agree, and that's why we enacted legislation to get around Christie 1. Saying so doesn't make it. You know, we complied with what Christie 1 said. I thought you were going to say Christie 1 was very clear. Says the author. Elusively. If you'll permit me one moment of levity, my time is up. I said to my team, I want to channel Dr. Seuss, because he said in Horton, here's a who, something that I thought was applicable. You meant what you said, and you said what you meant, and we followed your guidance 100%. Thank you. All right. Before I start, my clock shows 12 minutes. I thought there was an extension. You'll have more. Okay. I look forward to the additional time. Yeah. We'll give you four more. Good morning, Your Honor. Good morning, Your Honors, and may it please the Court, Paul Clement for the appellees. The statute at issue here is the fourth effort by New Jersey to try to channel sports gambling to their state-authorized venues for gambling, namely casinos, racetracks, and a couple of former racetracks. Now, the first of those, of course, the Court's familiar with, which is Christie, the statute. There was a sort of frontal effort to do this and take on past this constitutionality, and that resulted in the Christie 1 decision. The second one is also interesting, though. There was a first partial appeal effort, Senate Bill 2250, and that was simply a partial repeal of all the prohibitions on sports gambling and gambling merely at casinos and racetracks. It didn't have the above 21 provision. It did not have the restriction on New Jersey colleges and New Jersey venues. Governor Christie recognized that that Senate bill was an obvious effort to evade federal law and vetoed it. So this concept that my friend of his – But we don't have that before us. Let me run a summary judgment here. I understand all that, Your Honor. I just think it's helpful context, though, because my friend on the other side says that the notion that a partial repeal could somehow be an authorization is Orwellian. Well, it didn't strike Governor Christie as Orwellian the first time around. I think he quite clearly understood that not all partial repeals are created equal. Maybe if you want to repeal all of the prohibitions on gambling except within 1,000 feet of a school, that's quite a bit different from saying we're going to have this targeted partial repeal that's going to allow us to channel all of the sports gambling that's going to be lawful in this state to our favorite venues. And that's really targeting Christie 1. It's really saying, aha, repeal, so we repeal. But let me ask you, you're talking about context. Here we have these words sponsor, operate, advertise, promote, license, authorize. There is a canon, associated words canon, and all of these words anticipate something more, something affirmative. Should we not read authorize to mean something more than merely permit? Should we read it to say authorize by empowering, giving the state imprimatur, if you will? I get back to the issue of how do we read authorize. And doesn't the context in PASA make it seem like the state has to do something by law that is a scheme as compared to just saying, okay, you can do it at these places? Well, a couple of responses, Your Honor. I mean, I think that in terms of the context, you obviously can look at the surrounding words. I think you can also look at the legislative history. I think that's still allowed in this country. And if you look at the Senate report, there are three things that it is crystal clear that Congress is concerned about. They're concerned about states having state lotteries that involve sports gambling. They are concerned with racetracks that are already venues for state-authorized gambling having sports gambling. And they are specific. If you look at the Senate report, it's very specific. At that time, Florida is going through the process of renewing the licenses of its racetracks. And Congress is worried that they're going to get involved in sports gambling as a way. You know, this is 20 years ago, or 20-plus years ago, but the racetracks were already in a little bit of financial trouble. And there was concern that they're going to try to add sports gambling as the next solution. Congress was very concerned about that. The third thing they were concerned about was what they called in the Senate report casino-style sports gambling. And they were specifically focused on the New Jersey situation. They were willing to grandfather in Nevada, not because they thought that was great, but because I think they made the kind of measured judgment that Congress has made, which is that there's reliance interests in Las Vegas, the reliance interests in the Delaware and Oregon lotteries, that are different in kind from what's at issue in New Jersey. Now, at the time that the Senate report is being put together, the actual Senate version actually doesn't allow for anything in the New Jersey casinos. Later, as part of a compromise, the provisions added that gives the one-year window that New Jersey did not take advantage of. Now, I think what that shows you is that Congress was particularly concerned with the idea that sports gambling would take place in the venues that states had selected as being the venues for state-authorized gambling. I don't think we can go beyond the language of the law and really look at that. I mean, it's fair to know about it, but unless there's an ambiguity in the law, there really isn't a need. And, again, I look at the other words, and they require something more than – I mean, they really require involvement of the state promoting, licensing, advertising it, putting its seal of approval, if you will. So, again, I get back to how we read the word authorized and what you can tell me to help me say that this makes – that this fits within authorization. Well, before I leave the legislative history entirely, as I understand the colloquy we're having, you're basically telling me that, you know, maybe you're not – I mean, I think the most straightforward definition of authorized is the dictionary definition that we give you at page 20 of our brief, which says to give power or permission to, to give legal effect or official approval to. That comes from the state. What's that? That comes from the state, doesn't it? In other words, to authorize means to give power or official meaning that the state is involved in the process. Sure, absolutely. And I can't think of a better way to do that than to have the only venues in the state that are allowed to do sports gambling to be the ones that are the state-authorized, state-licensed venues for that kind of sports gambling. And, obviously, they're going to try really hard. They're going to say, well, the sports lounge is going to be less regulated than the rest of this. But at the end of the day – But you say that the repealer functions as an affirmative act. Yes, I would say that. I mean, and I think Judge Rendell said the same thing in the first part of the argument, which is to say, you know, if you're looking for authorized by law, I mean, the law is the law that we are challenging here. Is that the case, though, that when you repeal a law that you are saying, well, yes, you can go ahead and do it? Or is it saying we're going to remove all sanctions? Like you decriminalize marijuana doesn't mean you can go out and smoke marijuana. It means we're not going to enforce the law against marijuana. Isn't it? Well, I think the answer to that is it depends, which is to say I don't think that all partial repeals are created equal. But I think a partial repeal that keeps the vast, vast majority of the prohibition in place and then selects not just the favored venues but then also tries to, you know, essentially dictate who's going to be able to engage in sports gambling and on what games they're going to be able to bet. At that point, that little sort of, you know, tiny, tiny hole in the donut is still a product of the state law. One way to think about this is I don't think this case would be particularly different if New Jersey, instead of styling this a partial repeal, simply amended their prohibitions on sports gambling and gambling to say, except that it will be permissible, you know, to start that, just express exception in the law that said except at sports lounges associated with casinos, racetracks and former racetracks as to bets made by- You would suggest that the state can repeal its gambling laws, do you? You're just arguing that this one didn't go far enough. Exactly. Exactly. We're trying to sort of reconcile what's happened here. This one didn't go far enough. Right. I'd say two things about it. Yeah, but that means that the state can't repeal certain laws, and in this case gambling laws. I'm just wondering how far do you have to go to say, okay, you did repeal. Is it all or nothing or can you go just so far to say, okay, the state has satisfied me that the laws against sports betting have been repealed? So, Judge Fuentes, it is not all or nothing. I think there are other options and I want to talk about those in a second. I want to say two things, though. One is, even if it were all or nothing, we don't think there would be a constitutional problem with that. And I'm happy to talk about that if you'd like. The second thing, though, is, you know, on behalf of my clients, I'm really trying to prohibit, you know, prevent there from being a Christie 3. And so I think whatever you do, you can't accomplish through a partial repeal or any other guise what New Jersey desperately wants to do, which is to channel sports gambling only to their favorite venues that happen to be associated with the state. So there's no way to accomplish that. And I'm trying to figure out what kind of repeal would satisfy the statute. But supposing that sports gambling were restricted to the two decommissioned racetracks? Definitely not okay. Not okay. Not okay. In some respects they're not licensed. The more they're trying to direct it just to one or two venues, the more, you can even think of that as an implied license for those two venues, but they're clearly authorizing it there. I think, you know, to give you an example of a partial repeal that would be okay, I think in some ways it's easier to think about. Doesn't the state have to identify where the activity can take place? Just like the former case, it's kind of like zoning. You can't sports gamble over there, but you can certainly do it over here. What's wrong with that? Well, I don't think that, you know, I think there is a fundamental difference between a state saying this can only take place at a handful of venues, especially when those are venues associated with state-authorized gambling. But there's a difference between saying this can only take place in a few venues that we've selected, which I think is problematic, and another statute that would say, well, this is only criminal if it takes place in certain venues. I think there is a common sense but also ultimately a legal difference between a state that says, you know, we're going to generally decriminalize gambling, but we're still going to prevent gambling within 1,000 feet of a school. And that, I think, is fundamentally different from a state that says it's still unlawful to engage in gambling or sports gambling anywhere in the state except within 10 feet of a casino. I mean, like I said, I think common sense-wise those are completely different. One is kind of you can understand is channeling law enforcement resources. The other is understood at channeling the gambling that they're going to allow in sports to their particular favorite venue. How about if it were to say repeal to the extent it can occur at Kiwanis or Rotary Club? I would still think that that violates PASPA. I think that's an authorization at those places. Yes, I think it's authorization. I think it's an applied license for those organizations to engage in it. That goes back to this point Judge Mendel just made. That goes back to my other question. How far does the state have to go for Mr. Clement to say they have satisfied me that they can engage in sports betting? Well, I think they have to go pretty far. But, again, I think, you know, I'm trying to give an example of a partial repeal that we think is perfectly consistent with PASPA. In a state, and I think this is, to be fair, I think it's easier to think about this in a state unlike New Jersey that doesn't have authorized gambling at particular venues. But let's take a state that just basically prohibits all gambling. And all of a sudden they decide, you know, it's gambling, sports gambling, and all of a sudden they decide, you know, that's kind of not the best use of our resources to try to tell everybody in the state that this is prohibited. So we're going to keep most of that on the board, but we're going to partially repeal it as to wagers under $100 between personal acquaintances or family members. Now, I think that would be a partial repeal of their prohibition. I don't think that that implicates PASPA. And, you know, I mean, I don't think it's flippant. It's not authorizing? I don't think it's authorizing. And, you know, one way of thinking about the answer to your question, and this may sound flip, but I think it's actually at least a way to start thinking about the issue, is the dividing line is maybe around 50%. Because if you have a general prohibition and very narrow exceptions to it, I think then the way you think about that is that the authorization to engage in the conduct is being provided by the statutory exceptions or partial repeals. The selectivity of it. Yes, exactly. And the idea that I think as a common sense matter, if 99% of sports gambling is prohibited, but there's a partial repeal or exception for 1%, what authorizes that activity to take place is the law's exception for the partial repeal. So, therefore, restricting sports betting to the casinos in Atlantic City and the two racetracks, that's the same as authorizing sports betting in those venues. Yes. And I would only add that, I mean, you know, the thing that I think differentiates the Kiwanis Clubs and the casinos is two things. One is I think there's a particular problem when the venues you select are those where there's already state-authorized gambling. And then the second thing I would say is I also think that although the two cases might be the same from a textual matter, if you're going to look at the legislative history, well, the one thing that's crystal clear that Congress did not want is the racetracks and the casinos. What about the unlicensed, the two racetracks that aren't currently under license? Does that detract at all? I don't think it detracts one way from the argument that I'm making, which is principally an authorization argument. Although your briefs were mostly about licensing. Well, we didn't think so because we led with the authorization argument and only followed in the second. I think the United States who will be up here in a few minutes is the one that's sort of focused on licensing. They'll speak for themselves. I think on the licensing piece it becomes a little harder, but at the end of the day, I don't think it becomes that hard because you still have the only venues that are selected are venues that either have a current license for some kind of state-authorized gambling or recently had one. And I still think that's sort of the dominant thing. See, under your theory, I'm thinking of Judge Rendell's example before that when prohibition was repealed, that's the same as telling people to go out and drink. Well, particularly if you say it's only repealed as a private club. I don't see it that way. A repealer is a removal of the restrictions and of all criminal laws, but it doesn't mean that the government is saying go ahead and go engage in this activity. And, again, I think the difference is a complete repeal, I think I would completely agree with you. That's why your opinion was so collusive. No, I do think so. I mean, I think if you have a complete repealer, at that point, as you said in Christie one, at that point you understand it's the people's sort of inherent right to engage in the conduct that's being sort of freed up. But if there's a partial repeal of prohibition and now the only place that you can do it is at the Kiwanis Club or some other private club, then I think the way you'd understand that is now the ability for you to drink there doesn't stem from your we the people inherent rights. It stems from the fact that there's an exception in the law for those venues and only those venues. And I do think that there is that important difference. I think there's a hard question of degree in the middle, as there is in most questions. But to get back to a point I've already made that I think is critically important, there's just no way for the state of New Jersey to get to the result they seem to want to get, which is we're going to have sports gambling at racetracks, former racetracks, and casinos because we want to give them and not really anybody else a shot in the arm economically. Well, there's a way, according to your argument, is not to restrict it to casinos and racetracks. Just don't mention the venue. Right, but I don't think, I mean, you know, I think if they want to have sort of a complete repeal, I think there's actually an interesting question if a state like New Jersey has a complete repeal, what happens at the casinos? And, I mean, I don't think we're going to get there because I don't think the state of New Jersey wants to have a complete repeal. But that gets to the point that Your Honor said in Christie 1, which is there are choices available to the state. Those may be hard choices, but they're not unconstitutional choices. I don't think it's a completely binary choice because, as I've said, I do think there are partial repeals like the friends and family plan, if you will, that would be perfectly consistent with PASPA, and all of this is perfectly consistent with the Constitution. My time is running out, but I would sort of end with the thought that, you know, as I indicated before, though, if it were a binary choice, and we don't think it was a binary choice, the United States doesn't think it's a purely binary choice, I still think it would be constitutional. But we don't have to reach the question of whether it's a binary choice. It wouldn't find that under PASPA it doesn't apply. Yes, I think that's right. My friend, Mr. Olson, I think is kind of here with a foot in two camps. He wants to win this case, but he also wants there to be sort of a springing commandeering problem here or something. And I think the best way to deal with both of those is to say this is an obvious effort to authorize by this partial repeal or exception to file as PASPA. But just to be clear, in Christie I, we really didn't mean there could only be binary choices. There are also things like the kind of partial repeals that I mentioned. What do you make of the one-year window in PASPA? Does that have any force here? I think it has a lot of force, because what it shows, it's another kind of a textual way of getting a congressional intent, because it shows that Congress didn't think that sports gambling that was limited to these venues was consistent with PASPA. They knew that would be another exception to PASPA, and they gave New Jersey a year with the obvious implication of that being after they take that opportunity, then it's gone, which is just a further indication that the one thing you can't do is what they want to do, which is to channel this stuff to the casinos and racetracks. Thank you, Your Honors. May it please the Court. My name is Peter Phipps on behalf of Amicus United States. The United States has an interest in the application of PASPA. You have not intervened in what will become Christie II. You have filed a statement of interest, and you're here as an agent. That's exactly right, Your Honor. And so as Amicus, with our interest being the application of a federal statute, I'd like to turn to one of PASPA's prohibitions at issue in this case, and that is the licensing prohibition and how that plays out with respect to New Jersey's 2014 Act. But the state is not licensing these operations, is it? And two of the operations, former racetracks, aren't licensed. So how does licensing come into play? It most certainly comes into play for a variety of reasons, and maybe I'll give a general gloss on that and then I'll touch in particular detail on the former racetracks. Essentially what New Jersey, what the 2014 Act does is it permits sports wagering at three locations, licensed casinos, licensed racetracks, and former racetracks that received a license within the past 15 years. In each of those instances, it's the receipt of a state license that is a prerequisite, indeed a condition precedent to sports wagering. It's not a receipt by the sports betting operators. It's a receipt by the casino, right? Right. It's a receipt by the casino, the racetrack, or the racetrack. Those licenses are not transferable, are they? No. No. Well, no, those licenses aren't. To go to your earlier question about consent, there must be a consent that flows down from that. But again, the notion here is this. Those entities that received licenses are the only ones that can engage in sports wagering. And consequently, venues without those licenses can't engage in sports wagering. But what if you said, okay, it can only occur at, you know, funeral homes. Funeral homes are licensed by the state. It can only occur at, you know, veterinary, you know, offices, and they're licensed by the state. I mean, are you saying that if it were directed at any place that is required to get a license from the state, then that would be licensing the operation of the sports game itself? It would be a prohibited license under PASPA. And the reason why is this. If it was, for instance, a funeral home, and now you've broadened and enlarged that license so that the funeral home could now engage in sports wagering, you have essentially, as Judge Berry said, revised that prior license. Not only have you revised it, you've broadened it, you've expanded it, and you've enlarged it. And by doing so, that constitutes a licensing. And that applies in particular to casinos, racetracks, and even to former racetracks. I have trouble understanding the concept. Because a casino has a license and because sports betting operation has asked for consent to operate there, that means that they are now functioning under the license of the casino. Is that it? Yes. Even though they didn't apply for a license, didn't pay a fee, did not undergo a background check, they nonetheless can function under the same license? With the consent of the operator. And, again, it goes back to licensing being the condition precedent. Suppose, I mean, the driver's license, even the driver's license, you have to apply for it, pay a fee, take a test, take a road test. Maybe there's a light background check. But I can't get into Judge Rendell's car and say, oh, you have a driver's license. May I drive with your license? Isn't it the same thing? I mean, at one level, we get into the peculiarities of state law, and maybe if there was a provision to the driver's license law that enabled that license to be transferable in some way with the consent of the license holder, then that would be okay. That's essentially what the 2014 act does. It probably says on the very license of this casino, this license is not transferable. I haven't seen one. But, I mean, those licenses are so specific to the conduct that they cover that I can't imagine that it would cover somebody else's sports betting operation. Well, remember, the license goes to the venue itself, and without that license, no sports betting can take place at that venue. And to the activities that take place in that venue. Yes. Do they include sports betting? The license itself, well, as revised, yes, it does, because the license has been broadened and expanded. So if somebody from the state comes in and says, well, now, wait a minute, you're licensed to do this kind of gaming, not sports gaming, the casino would say, ah, yeah, but look at the law. Unless it's the license that they've received, it is bigger now, because it's been a repeal. So only those former entities can engage in sports wagering. These are the entities that the state has determined need some help. Yes. Funeral homes are doing quite well. I understand that, Your Honor. And so maybe that doubles and blurs a little into the authorized by law, because there's probably going to be some Venn diagram overlap between those concepts at some point. But when there's a specific, when there's a limited, when there's a targeted, and when there's a repeal for a preferred class, that's how you know that the partial repeal is going to offend the provisions of past law. You wouldn't have the same argument. In fact, you wouldn't have any argument if sports betting were restricted to the defunct racetracks. No, yes, we would. It would be the exact same argument. But wait a minute. They're not licensed. They're defunct. Well, PASPA's licensing prohibition shouldn't be reduced to a narrowly construed, sorry, to make a licensing argument. You're saying that the casino, the sports betting operation is essentially functioning under the casino gaming license. And I'm saying, well, then let's restrict sports betting to the racetracks that don't have licenses. And I think the response to that is this. PASPA's licensing provision, that would be a very, very narrow reading of PASPA's license prohibition to only current license holders. And it would reduce the prohibition to just the mechanical issuing of licenses. Well, but that's a matter of fact. Either you do or you don't have a license. Or your sports betting has been permitted only by virtue of the fact that you currently have a license or received a license. Either one of those, licensing is a condition present. I know I'm over time, but if I may touch on one more point with respect to former racetracks. Please. There's also something about a false positive with respect to the former racetracks. And that's because in Section 1 of the 2014 Act, it permits sports wagering at casinos and racetracks upon a condition. And that condition, and I quote, quote, provided that the operator of the casino, gambling house, or running or harness racetrack consents to the wagering or operation. Now, this is a focus on the operator and operation. Now, former racetracks, by definition, aren't in operation. So, in many ways, it's a false positive and it is of no utility to the state's argument in this case. In the Supreme Court, the Department of Justice took the position that the state of New Jersey could repeal in whole or in part its laws respecting sports betting. Yes, that's correct. Hasn't it done that at this point? Well, again, that statement by the United States meant that some partial repeal is okay. It was not an endorsement, a categorical endorsement of any partial repeal, however that was styled. I gave you some instances where a repeal would allow sports betting, for example, in unlicensed, defunct racetracks, and you said even there it's a problem. And I'm trying to figure out how far the state has to go to satisfy PASPA, but at every turn there's an obstacle. Well, again, PASPA does have six prohibitions, and so at least the former racetracks, as styled, would offend the licensing prohibition. But there's no license there. It's just an empty, defunct track. Again, with no operator, which collapses on its own weight. But, again, to answer your question, drawing that line as to how far a state has to go is obviously, as any line drawing exercise, a difficult exercise. What the case here doesn't require that level of difficulty. What we know is that New Jersey has attempted to permit sports wagering at a specific, a limited, a targeted, and a preferred set of entities. That, in itself, violates PASPA. Thank you. Thank you very much. Mr. Olson. Thank you. May it please the Court. This is not a question of state law that's before this Court, or the state constitution, or what the governor or some legislator might want to see happen. It is a question of federal law, the meaning and interpretation of a federal statute. Now, it is a very bad law. Congress wanted to be involved in this with respect to wagering on sports. And it decided to do something, despite the fact that it had the power to prohibit and regulate and use its enforcement mechanisms and its legislative authority to prohibit sports betting. But it decided not to do that. It's a point I've been thinking about. Could Congress have simply banned all sports betting, period? Congress could have done that. Without enumerating six different activities that the state could not engage in. Congress could have done it subject to interstate commerce clauses. So, can you say this is a struggle of what authorization means? Well, I think that I read your opinion. And I read your opinion to mean that it's the words. And one of you referred to the fact that it's a stream of words. It has to do with the state providing an approval, a mechanism. So, almost as if you have a license to put in the window saying, this is permitted here. We talked about a scheme, also. You talked about scheme and a regime. You talked about permit issuing, licensing, state issued license, affirmative authorization, authorization by law, state scheme, state sponsored, state sanctioned. And then that was in the context of repeated statements by my opponents in the district court, in this court, and to the Supreme Court. Don't take this case because repeal is not authorization. The state may repeal any of its prohibitions. You just quoted Judge Fuentes from page 11, I think it was from the brief of the United States government, telling the United States Supreme Court, do not take this case because it does not involve the 10th Amendment. Indeed, PASPA does not require states to do anything. New Jersey was able to comply for 20 years without doing it. PASPA does not even obligate New Jersey to leave in place the state law prohibitions against sports gambling that it had chosen to enact prior to PASPA's enactment. To the contrary, New Jersey is free to repeal those prohibitions in whole or in part. That is what the Solicitor General of the United States told the Supreme Court. Don't take this case because there is no 10th Amendment issue involved. Now, what does this statute mean? What it means, and we were worried at the beginning of this thing that exactly what's happening here, Mr. Clement says we're trying to resurrect the 10th Amendment issue. Well, we certainly are. It means what he says, not all repeals are equal. What does that mean? What does it mean that the state cannot lift its hand, does not have to lift a finger with respect to this, and just say with respect to certain places, this stuff we're not going to have anything to do with? That is what the authoritative interpretation of PASPA was in this court the last time we were here. New Jersey looked at that, and while some people might like to have lots of sports wagering in New Jersey, there's no doubt about that, but they tried to comply with the law. They felt that the law was unconstitutional. They said you can't come in and require us to maintain or enforce statutes. That violates the 10th Amendment. The government and our opponents said, well, that's not what it does. You are not required to maintain or enforce any prohibition. You can repeal them. You can repeal some of them. You can enforce some of them. So now this is a totally different story because New Jersey took your word for it and the words of our opponents and repealed those prohibitions. But repeal means to take away, to take off the books, if you will, to remove. But doesn't the 2014 law do more than that? It does more than that. It goes affirmatively to say this statute does not. It goes affirmatively to permit. No, it goes affirmatively to not. It takes the prohibition off the books. Then it also says that nothing about this law may be construed to constitute authorization, licensing, permission. It's in the law. But that does not impact our interpretation of the words of the federal statute. I believe it does, Your Honor, and I respect the fact that it's your decision and not mine, but we can only interpret it when we read the words over and over again that you may repeal existing prohibitions and what you may not do is affirmatively authorize by law. There's a reason, I assume, why the court put those words in italics. New Jersey is not authorizing by law these casinos to do anything. It's just saying you can do it. We're taking off our hands. We're agnostic about it. And that's what was said over and over again. I won't repeat all of these quotations because I'm out of time, but they were said over and over again in your decision. Are you saying that New Jersey is retaining no interest whatsoever in sports betting? That's right. That's right. And except to the extent that 21-year-old people engage in fraud or something like that, just like any other overarching statute. New Jersey is not going to tax sports betting? Well, if you have income, if it's prostitution, if it's marijuana, if it's any other activity that complies with the overarching laws of the state. One final point. If New Jersey repealed, and we're now told it's perfectly okay under PASCA, the law that was designed to stop the spread of sports betting, it's perfectly okay now to repeal not only the things that you repeal with prohibitions, but every other provision. Now you can have it all over this state of Virginia, so it's not stopping the spread of sports betting, a strange interpretation. But what if New Jersey did that by statute or enforcement mechanism and then decided, well, we don't want 21-year-olds to do this sort of thing? Now New Jersey is perfectly okay under PASCA and prohibits 21-year-olds? Now it's violating PASCA? Well, then it's regulating. Then it is doing what the state police power really permits. That would be very ironic, and I suspect we'd be in here again. You can't prohibit 21-year-olds from doing this, or now you're violating PASCA. All of this leads to the final point, is that that kind of heavy hand of the government on what New Jersey can do and what New Jersey cannot do, and it's not involving not lift a finger. It's telling New Jersey what kind of repeals are okay and what kind are not okay. So you're saying Christie 1 was decided wrongly with respect to the commandeering? Well, you were given wrong advice by the attorneys on the other side. That stuff happens. Thank you, Your Honor. Thank you. Case is very well argued. We appreciate counsel and amicus and all parties coming. We will take it under advisement. Ask the clerk to recess court.